# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| ORANEFO OKOLO, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:11-cv-00731** |
| v. | ) | |
| | ) | |
| METROPOLITAN GOVERNMENT OF | ) | **JUDGE SHARP** |
| NASHVILLE AND DAVIDSON | ) | **MAGISTRATE JUDGE KNOWLES** |
| COUNTY, TENNESSEE, and OFFICER | ) | |
| MICHAEL GALLAGHER, individually | ) | |
| and in his official capacity, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Pending before the Court are multiple motions to dismiss filed by Defendants Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro") and Officer Michael Gallagher in this civil rights suit arising under 42 U.S.C. § 1983 and the laws of the state of Tennessee. Metro filed a Motion to Strike Plaintiff's Second Amended Complaint (Docket Entry No. 66) and, alternatively, a motion to Dismiss Plaintiff's Second Amended Complaint (Docket Entry No. 67). Plaintiff Oranefo Okolo ("Plaintiff") filed responses. (Docket Entry Nos. 70 & 71.) Also pending before the Court is Metro's Motion to Dismiss the First Amended Complaint (Docket Entry No. 52), which was fully briefed by the parties. (See Docket Entry Nos. 56 & 60.) For the reasons stated herein, the Court will deny Metro's motion to strike and will grant Metro's motion to dismiss the Second Amended Complaint. The Court will deny as moot the motion to dismiss the prior complaint.

Gallagher filed a Motion to Dismiss the Second Amended Complaint (Docket Entry No. 64), to which Plaintiff filed a response (Docket Entry No. 69). Also pending before the Court is

1

Defendant's Motion to Dismiss the First Amended Complaint (Docket Entry No. 49), to which Plaintiff filed a response (Docket Entry No. 55). For the reasons stated herein, the Court will grant in part and deny in part Gallagher's Motion to Dismiss the Second Amended Complaint, and will deny as moot the motion to dismiss the prior complaint. Because the Court will rule on Gallagher's motion to dismiss, it will deny as moot his motion to stay discovery pending resolution of his motion to dismiss (Docket Entry No. 41).

Gallagher and Metro (collectively, "Defendants") filed a Motion for Relief Under Local Rule 83.03 (Docket Entry No. 47). The Court will deny the motion but reminds all attorneys of their duty to refrain from making public statements that pose a serious and immediate threat of interfering with a fair trial. (Local Rule 83.03.)

## FACTS

Plaintiff is the president of Foundation Community Health Center ("Foundation"), a non-profit mental healthcare provider in Nashville.[1] Gallagher, an officer with the Metro Nashville Police Department, came to Foundation on November 15, 2010, seeking to arrest someone who was alleged to have been a patient there. Gallagher did not have his identification card or an arrest warrant. Citing healthcare privacy laws, Plaintiff refused to provide Gallagher with any information about Foundation's patients. Gallagher became upset and threatened to arrest Plaintiff before calling his sergeant, who told him to leave the premises because he did not have an identification card.

Gallagher returned the next day, November 16, 2010. This time, Gallagher brought his identification card, but he had no arrest warrant or other official process. Again citing healthcare privacy laws, Plaintiff refused to provide Gallagher with any information about

---

[1] Unless otherwise noted, the allegations are drawn from Plaintiff's Second Amended Complaint (Docket Entry No. 63).

2

Foundation's patients. In response, Gallagher pulled Plaintiff out of his chair, shoved him against the wall, and arrested him, stating no reason for the arrest. Gallagher then handcuffed Plaintiff and said he would take Plaintiff to police headquarters for booking. Plaintiff told Gallagher that the handcuffs were hurting him, but Gallagher refused to remove or loosen them.

Another Foundation employee called 911, and Officer Archuletta of the Metro Nashville Police Department responded. Gallagher told Archuletta that Plaintiff was obstructing justice. Before Archuletta arrived, Gallagher made comments to Plaintiff, such as "I would like to see a big black man in a nice suit run down the streets in handcuffs," "I don't care what [the] HIPAA law says," and "I will make sure you are locked up for a long time."

Over an hour later, a Metro Nashville Police Department sergeant arrived and instructed Gallagher to remove Plaintiff's handcuffs. The sergeant met privately with Plaintiff and explained that Gallagher overreached and had no justifiable reason to place handcuffs on Plaintiff. Criminal charges were never filed against Plaintiff.

Plaintiff alleges that, prior to the events of November 16, Metro was aware that its officers were making illegal arrests and, in response, had ordered new training on what constitutes an illegal arrest. At the time of the arrest, Metro fostered an atmosphere of overreaching officers by rewarding proactive work, such as the service of warrants. Metro's written "Obstruction of Rights" policy was so poorly drafted that officers such as Gallagher received no meaningful guidance from it. Metro did not provide training on HIPAA or other laws that protect the confidentiality and privacy of mental health patients, nor did it provide Gallagher with training and instruction on the crime of resisting arrest.

3

## LEGAL STANDARD

The Federal Rules of Civil Procedure require Plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). In deciding a motion to dismiss under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The court must assume that all of the factual allegations are true, even if they are doubtful in fact. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In contrast, legal conclusions are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Generally, a complaint does not need to contain "detailed factual allegations," although its allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Blanket assertions" or a "formulaic recitation of the elements of a cause of action" are not sufficient. *Twombly*, 550 U.S. at 555, 556 n.3. In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The factual allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949-50. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. "In the context of Section 1983 municipal liability, courts have interpreted *Iqbal*'s standards strictly." *Hutchison v. Metro. Gov't*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2009); *Maness v. Boston Scientific*, 751 F. Supp. 2d 962, 966 (E.D. Tenn. 2010) (explaining that *Twombly* applies to state-law claims in federal cases).

4

## ANALYSIS

As a preliminary matter, Metro asks the Court to strike Plaintiff's Second Amended Complaint because it was filed without leave of the Court or consent of the parties, in violation of Rule 15(a) and the Initial Case Management Order. (Docket Entry No. 66.) Metro argues that allowing Plaintiff's Second Amended Complaint would prejudice Metro, as it has already conducted depositions and no longer has an opportunity to cross-examine witnesses about the timeline of events. Plaintiff responds that its failure to file a motion for leave to amend along with its Second Amended Complaint was inadvertent, and that Metro was aware of the substance of the Second Amended Complaint. (Docket Entry No. 70.) Plaintiff maintains that the new complaint clarifies a factual ambiguity and does not prejudice Metro, who inquired about the events in question while deposing Plaintiff's witnesses. In essence, Plaintiff argues that the changes in its Second Amended Complaint are minor and asks the Court to grant it leave to amend as if the motion for leave had been timely filed on June 12, 2012, the date on which Second Amended Complaint was filed.

Ordinarily, a court should "freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2); *Forman v. Davis*, 371 U.S. 178, 182 (1962). Where a pleading is amended without leave of court or consent of opposing parties, it may either be considered a nullity, *United States ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 296 (5th Cir. 2003), or taken as properly introduced "as long as the amendments do not unfairly surprise or prejudice the defendant," *Hicks v. Resolution Trust Corp.*, 767 F.Supp. 167, 170 (N.D. Ill. 1991). *See* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1484 (noting that an improperly filed amended complaint may be

5

nonetheless allowed "when leave to amend would have been granted had it been sought and when it does not appear that any of the parties will be prejudiced by allowing the change"). An amended complaint need not be allowed where there has been undue delay, bad faith, dilative motive, or a repeated failure to cure the deficiency in a pleading. *Johnson v. Ventra*, 124 F.3d 197, at *2 (6th Cir. 1997) (per curiam) (reversing district court's denial of motion for leave to amend 13 months after action was filed). If a request for leave to amend requires modification of a scheduling order, a plaintiff must show good cause for its failure to seek leave to amend. *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). Whether or not to allow an amended pleading under Rule 15(a) is committed to the Court's discretion. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 551 (6th Cir. 2008).

Although Plaintiff failed to file a contemporaneous motion requesting leave to amend, he did file the Second Amended Complaint by the deadline in the scheduling order. In the Court's view, the changes are minor and do not prejudice Metro. The Second Amended Complaint adds no new causes of action. It sets forth two new factual allegations—that Metro failed to train police officers on health privacy laws, and that Metro failed to train Gallagher on the crime of resisting arrest—and clarifies another: that Gallagher taunted Plaintiff *before* Officer Archuletta arrived. These are small factual changes, well within the ambit of the First Amended Complaint and thus the scope of discovery already conducted, and cannot be said to "unfairly surprise or prejudice" Metro, particularly at this early stage of litigation. There is no evidence of bad faith, dilatory motive, or repeated failures to cure a deficient pleading. Undue delay is not a factor, either, as the Second Amended Complaint would have been timely filed had it been

6

accompanied by a motion requesting leave to amend. The Court would have granted that motion then, and mindful of judicial economy and Rule 15's admonition that leave to amend pleadings should be freely given in the interest of justice, will grant leave to amend effective June 12, 2012, the date of filing.[2] Accordingly, the remainder of this order concerns Metro's and Gallagher's respective motions to dismiss Plaintiff's Second Amended Complaint.[3]

The Second Amended Complaint (Docket Entry No. 63) enumerates eight causes of action. Count I alleges, pursuant to 42 U.S.C. § 1983, that all Defendants deprived Plaintiff of Constitutional rights protected under the due process and equal protection clauses of the Fourth and Fourteenth Amendments. Count II alleges municipal liability against Metro for its hiring, training, and supervision of its officers and for its policies and procedures regarding arrests, use of force, and preservation of civil rights. Replicating some of the language from the first count, Count III alleges, pursuant to 42 U.S.C. § 1983, that Gallagher deprived Plaintiff of Constitutional rights protected under the due process and equal protection clauses of the Fourth and Fourteenth Amendments. Count IV alleges negligence against both Defendants. The next three counts are state common-law claims against both Defendants: battery (Count V), false imprisonment (Count VI), and

---

[2] The Initial Case Management Order remains undisturbed. Because the pleadings were timely fixed by the scheduling order's June 13, 2012, deadline, there is no need for the Court to determine whether Plaintiff has shown good cause that he be permitted to modify it, nor does Metro urge the use of that standard. *See Leary*, 349 F.3d at 909 (adopting "good cause" and "prejudice" inquiry for modification of scheduling orders); *see also Shane v. Bunzl Distribution USA, Inc.*, 275 F. App'x 535, 537 (6th Cir. 2008) ("Rule 16 was designed to ensure that 'at some point the pleadings will be fixed'") (citing Fed. R. Civ. P. 16(b), 1983 Advisory Committee's Notes).

[3] As a practical matter, the Court's rulings would not change were it to consider Plaintiff's First Amended Complaint rather than the second. In the interest of justice, judicial economy, and a desire to avoid needlessly duplicative litigation, the Court opts to rule on the latter complaint.

outrageous conduct (Count VII).  Count VIII alleges that Metro is liable under the Tennessee Governmental Tort Liability Act (TGTLA).

Metro's motion to dismiss seeks dismissal of all claims.  Gallagher's motion to dismiss is partial, seeking dismissal of Counts I, II, IV, and VIII.  For the sake of clarity of analysis, the Court will evaluate the motions to dismiss the Second Amended Complaint count by count.

## I.    Count I: Fourth and Fourteenth Amendment Violations (Both Defendants)

### A.    Gallagher

Gallagher asks the Court to dismiss Count I to the extent that Plaintiff is seeking to plead a claim for violation of the Fourteenth Amendment. (Docket Entry No. 65, at 8.)  The Sixth Circuit has made clear that "[t]he Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that 'arise[] in the context of an arrest or investigatory stop of a free citizen,'" whereas the Eighth and Fourteenth Amendments apply in other circumstances. *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010) (alteration in original) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)); *accord Lanman v. Hinson*, 529 F.3d 673, 681 (6th Cir. 2008).  Because the Fourth Amendment applies to the force used to arrest Plaintiff in this case, Gallagher contends that Plaintiff has not articulated a Fourteenth Amendment "due process" claim.  Furthermore, Gallagher argues that Plaintiff has not pled adequate facts to support his claim for violation of his equal protection rights.  "To establish an equal protection claim under § 1983, Plaintiff must show that []he is a member of a protected class and that []he was intentionally and purposefully discriminated against because of h[is] membership in that protected class." *Jones v. Union Cnty., Tenn.*, 296 F.3d 417, 426 (6th Cir. 2002) (citing *Boger v. Wayne Cnty.*, 950 F.2d 316, 325 (6th Cir. 1991)).  Alternatively, Plaintiff could allege that he "has been intentionally treated differently from others similarly situated and

8

that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The First Amended Complaint does not allege that Plaintiff is a member of a protected class, much less intentional and purposeful discrimination because of Plaintiff's membership in that class. Nor does Plaintiff allege that he received different treatment from others similarly situated intentionally and without rational basis.

In his responsive brief, Plaintiff makes clear that he is seeking to vindicate the alleged violation of his Fourth Amendment rights and asks the Court to apply the Fourth Amendment's "objective reasonableness" standard to his allegedly unlawful seizure. (Docket Entry No. 69, at 3-4.) *Cf. Darrah v. City of Oak Park*, 255 F.3d 301, 305-06 (6th Cir. 2001) (explaining that a plaintiff can more easily show a violation of the Fourth Amendment "objective reasonableness" standard than a violation of substantive due process under the Fourteenth Amendment). Plaintiff invokes the Fourteenth Amendment because it applies Fourth Amendment protections to the states, *see Michigan v. Summers*, 452 U.S. 692, 694 n.2 (1981); *Arbuckle v. City of Chattanooga*, 696 F. Supp. 2d 907, 921 (E.D. Tenn. 2010), not because Plaintiff is seeking to vindicate alleged violations of substantive Fourteenth Amendment rights, s*ee Minor v. City of Memphis*, 2006 WL 889333, at *2 n.1 (W.D. Tenn. Mar. 30, 2006). Plaintiff offers no rebuttal to Gallagher's argument that Plaintiff has not adequately pled a violation of Fourteenth Amendment due process and equal protection rights.

The Court agrees with Gallagher that Count I does not adequately plead a violation of the Fourteenth Amendment. Accordingly, the Court will dismiss without prejudice the Fourteenth Amendment allegations against Gallagher from Count I. Because the Court grants the motion to dismiss the Fourteenth Amendment allegations, it need not reach Gallagher's argument for

9

qualified immunity from those allegations.  Furthermore, as Gallagher has offered no argument for their dismissal, the Fourth Amendment allegations against Gallagher will survive.

## B.    Metro

Because Plaintiff has not adequately pled Gallagher's violation of his Fourteenth Amendment rights, Plaintiff cannot pursue such a claim for municipal liability against Metro. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007).  Furthermore, to the extent that Plaintiff is seeking to establish a violation of procedural due process, Plaintiff should have pled the inadequacy of state remedies as an element of the constitutional tort.  *See Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 588 (6th Cir. 2004).  For these reasons, the Court will dismiss without prejudice the Fourteenth Amendment allegations against Metro from Count I.

Metro also asks the Court to dismiss the Fourth Amendment claim against it from Count I because the count contains no allegations specific to Metro's conduct and duplicates the allegations of other counts. In its reply, Plaintiff offers no argument regarding Metro's liability under Count I. (Docket Entry No. 71.) Municipal governments may only be sued under § 1983 for unconstitutional or illegal municipal policies, and not for unconstitutional conduct of their employees." *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 819 (6th Cir. 2007) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). The adoption or deliberate non-adoption of a "policy or custom" that violates a plaintiff's constitutional rights is the sole manner in which a municipality can be held liable under § 1983. *See Schroder v. City of Fort Thomas*, 412 F.3d 724, 727 (6th Cir. 2005). Because Plaintiff alleges all possible theories of municipal liability against Metro in Count II, discussed *infra* Part II, Count I is duplicative.

10

Accordingly, the Court will dismiss without prejudice the Fourth Amendment allegations against Metro from Count I.

## II.        Count II: Municipal Liability (Metro)

Metro asks the Court to dismiss Count II in its entirety. It argues that Plaintiff has not met its burden of pleading sufficient factual allegations, taken as true, to establish a § 1983 claim against the Metropolitan Government that is plausible on its face. To the extent that Plaintiff's claims regarding police training, supervision, hiring, and policymaking are unsupported, implausible, or consist of "legal conclusions masquerading as facts," Metro argues, they must fail. (Docket Entry No. 68, at 5.) Plaintiff responds that, considering all facts in the light most favorable to Plaintiff and drawing all inferences in his favor, he has pled a prima facie claim of municipal liability for a Fourth Amendment violation under § 1983.[4] He argues that the specific facts alleged about Gallagher's actions "give rise to an inference that Defendant Metro has failed in some way in either its hiring, training, or supervision of Defendant Gallagher, as no police officer who had been properly investigated before hiring and properly trained and supervised after hiring would act in such a fashion." (Docket Entry no. 71, at 4.) Plaintiff argues that he has alleged specific Metro policies and customs that are sufficient to support an allegation that Metro was deliberately indifferent to the unconstitutional actions of its employees.

To plead a claim for municipal liability under § 1983, Plaintiff must plausibly allege that his or her constitutional rights were violated and that a policy or custom of Metro was the "moving force" behind the deprivation of Plaintiff's rights. *Miller v. Sanilac County*, 606 F.3d 240, 254-55 (6th Cir. 2010) (citing *Monell*, 436 U.S. at 694) (internal citation omitted). There are

---

[4] Plaintiff asks the Court to find that Defendant has failed to demonstrate that Plaintiff can prove "no set of facts" that would entitle him to relief. (Docket Entry No. 71, at 2.) However, the Supreme Court has made clear that "no set of facts" is not the appropriate measure of pleading sufficiency. *Twombly*, 550 U.S. at 562-63.

effectively four ways to establish municipal liability under § 1983. Plaintiff can challenge the official action of a municipal legislative body, agency, or board; a policymaking decision by an individual with final decision-making authority; Metro's deliberately indifferent failure to screen, train, or supervise its employees; or Metro's deliberate indifference to a clear and persistent pattern of illegal activity (a "custom") about which Metro policymakers knew or should have known. *Monell*, 436 U.S. at 694; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989); *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005).

### a) Custom

To hold Metro liable for its officer's unconstitutional action under a "custom" theory, Plaintiff must show that Metro has (1) an unwritten custom (2) of remaining deliberately indifferent (3) to a clear and persistent pattern of illegal uses of force and seizures (3) that it knew or should have known about. *See Thomas*, 398 F.3d at 433. Plaintiff alleges that Metro has "failed to adopt policies" and has "permitted and tolerated a pattern and practice of unjustified, unreasonable and excessive uses of force against and illegal arrests of civilians" by Metro police officers. (Docket Entry No. 63 at 6.) In support of this claim, Plaintiff alleges that "Metro was aware of illegal arrests being made by its police officers" before the date of Plaintiff's arrest and had "ordered new training for officers in the weeks surrounding this incident, refreshing them on what constitutes an illegal arrest. (*Id.* at 5.)

The Court finds that Plaintiff has not stated a viable claim under a custom theory of municipal liability. The first of Plaintiff's three allegations is merely a formulaic recitation of the elements of a cause of action. *See Twombly*, 550 U.S. at 555; *Fisher*, 387 F.3d at 849. The second, while couched as a factual allegation, contains no well-pleaded facts to support the legal

12

conclusion that Metro was on notice of a pattern or practice of unconstitutional uses of force and arrests by its officers. *See Hutchison v. Metro. Gov't of Nashville and Davidson Cnty.*, 685 F.Supp.2d 747, 751 (M.D. Tenn. 2010) (without supporting factual assertions, Plaintiff's claim that Metro has a custom, policy, or practice of stopping vehicles and illegally ordering disabled passengers to exit must be dismissed). The conclusory statement that Metro was "aware of illegal arrests being made by its officers" is a blanket assertion of the type proscribed by *Twombly*. Plaintiff fails to plead a "clear and persistent pattern of illegal uses of force and seizures." Finally, the lone factual support Plaintiff offers for his claim—namely, that Metro ordered new training for its officers—may fatally undermine it. After all, in undertaking to train its officers Metro cannot be said to display deliberate indifference toward a pattern of unconstitutional conduct; remedial training is the antithesis of deliberate indifference. Taking the lone non-conclusory fact as true and drawing reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has failed to plead a plausible municipal "custom" that unconstitutionally violates his rights.

### b) Failure to Train, Screen, or Supervise

"A systematic failure to train police officers adequately is a custom or policy which can lead to municipal liability." *Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006) (citing *City of Canton*, 489 U.S. at 388). Under a "failure to train" theory of municipal liability, Plaintiff must show that (1) a training program is inadequate to the tasks that the officers must perform; (2) the inadequacy is the result of Metro's deliberate indifference; and (3) the inadequacy is closely related to or actually caused the plaintiff's injury. *Plinton v. County of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (citing *City of Canton*, 489 U.S. at 389-91) (internal quotation marks omitted). In the context of a failure to train claim, deliberate indifference can be

13

demonstrated in two ways: "through evidence of prior instances of unconstitutional conduct demonstrating that the [municipality] had notice that the training was deficient and likely to cause injury but ignored it," or "through evidence of a single violation of federal rights, accompanied by a showing that the [municipality] had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Harvey v. Campbell County, Tenn.*, 453 F. App'x 557, 562-63 (6th Cir. 2011) (internal citations omitted). Deliberate indifference based on a single violation of rights requires "a complete failure to train the police force, training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Id.*, at 567 (citing *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir.1982)).

Liability for unconstitutionally inadequate supervision or discipline is treated, for all intents and purposes, as a failure to train. It requires more than "a mere failure to act. Rather, the supervisors must have actively engaged in unconstitutional behavior." *Gregory v. City of Louisville*, 444 F.3d at 751 (6th Cir. 2006). Plaintiff must allege that Metro was deliberately indifferent to a history of widespread abuse. *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994). Liability for a municipality's failure to screen a prospective employee also requires a finding of deliberate indifference. To hold Metro liable for inadequately screening Gallagher in the hiring process, Plaintiff must show that adequate scrutiny of his background would have led a reasonable policymaker to conclude that the plainly obvious consequence of hiring him would be the deprivation of a constitutional right. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 411 (1997).

Plaintiff makes a number of assertions regarding Metro's failure to screen, train, or supervise its police officers. He states that "Metro has failed to adopt policies or to properly train

14

police officers of the Metropolitan Nashville Police Department in the use of excessive force and proper arrest procedures." (Docket Entry No. 63 at 6.) He alleges that Metro's hiring, training, and supervision of police officers were reckless, negligent, and deliberately indifferent. (Docket Entry No. 63 at 7.) He alleges that Metro failed to provide training on "particular privacy issues presented by HIPAA and other statutes" that protect the private medical information of mental health patients. (*Id.* at 5.) Finally, Plaintiff states that Metro did not train Officer Gallagher on the elements of the crime of resisting arrest, which led to Plaintiff's unconstitutional arrest on November 16, 2010. (*Id.*)

Plaintiff does not adequately plead his claim that Metro failed to train its officers on the crime of resisting arrest. The Court declines to accept as true formulaic recitations of the elements of a cause of action and supporting conclusory statements, which comprise the bulk of Plaintiff's allegations. *Twombly*, 550 U.S. at 555; *see Birgs v. City of Memphis*, 686 F.Supp2d 776, 780 (W.D. Tenn. 2010) (dismissing failure to train claims where Plaintiff failed to meet burden of pleading more than conclusory statements). Even assuming, as we must at this stage of the litigation, that Officer Gallagher did not receive training on the crime of resisting arrest, this fails to support a municipal liability claim. Plaintiff alleges no department-wide failure to train on resisting arrest. *See City of Canton*, 489 U.S. at 390-91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."); *see also Sexton v. Kenton Cnty. Det. Ctr.*, 702 F. Supp. 2d 784, 791 (E.D. Ky. 2010) (A "purported failure to discipline a single officer, as opposed to a systematic policy, cannot support a claim of municipal liability. A *Monell* claim will fail where the plaintiff provides evidence as to only a

single officer, rather than evidence regarding department-wide inadequacy in training.") (internal citations omitted).

Moreover, Plaintiff does not state a plausible claim of deliberate indifference. "The inadequacy of police training only serves as a basis for § 1983 liability 'where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008) (citation omitted). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. ——, 131 S.Ct. 1350, 1360, (2011). To establish deliberate indifference, the plaintiff must ordinarily show "prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir.2005); *accord Miller v. Sanilac County*, 606 F.3d 240, 255 (6th Cir. 2010); *see Connick*, 131 S.Ct at 1360. Deliberate indifference requires more than a negligent series of oversights; the risk of a constitutional violation must be "plainly obvious" and yet disregarded. *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997).

Nowhere in the Second Amended Complaint does Plaintiff make a plausible allegation that Metro displayed such a complete failure to train its officers that constitutional violations were substantially certain to result. *See Hays*, 668 F.2d at 874. He pleads no facts and cites no prior instances of unconstitutional conduct to support his conclusory allegation that Metro was aware of a history of illegal arrests, much less that they ignored them. Even assuming Metro provided its officers no training on medical privacy laws, Plaintiff cannot establish that the lack of training itself was the proximate cause of his unreasonable arrest. *See Mann v. Helmig*, 289

16

F.App'x 845, 850-51 (noting that one can always retreat far enough to find a policy that "caused" the alleged constitutional violation, but declining to find an "affirmative link" where the connection between the policy and the injury are too tenuous) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)); *see also Connick*, 131 S. Ct. at 1363 ("[S]howing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability" for one incident of unconstitutional conduct.). Indeed, in this case a lack of HIPAA training was not even plausibly an actual cause of Plaintiff's arrest, as Metro points out, because HIPAA would not have prevented Plaintiff from giving Gallagher the information he sought. *See* 45 C.F.R. § 164.512 (2012) (permitting disclosure of certain information to a law enforcement official for the purpose of locating a suspect, fugitive, material witness, or missing person). (*See also* Docket Entry No. 68 at 8.) Finally, Plaintiff's deliberate indifference claim is further undermined by his own allegation, discussed *supra*, that Metro ordered new training for police officers on the topic of illegal arrests. Not only does Plaintiff fail to plead deliberate indifference, then, he fails to plead a failure to train. Without a well-pled allegation of deliberate indifference or other unconstitutional conduct by supervisors, Plaintiff's "failure to supervise" claim must fail as well.

Finally, Plaintiff does not state a cognizable claim that Metro is liable as a municipality for hiring Gallagher. Other than the conclusory allegation that Metro was deliberately indifferent in the hiring process, Plaintiff makes no attempt to plead that that adequate scrutiny of Gallagher's background would have led a reasonable policymaker to conclude that the plainly obvious consequence of hiring him would be the deprivation of a constitutional right. *See Bryan Cnty.*, 520 U.S. at 411. No allegations about Gallagher's background are included in the Second Amended Complaint. Thus, no claim based on inadequate screening of Gallagher has been pled.

In a nutshell, Plaintiff argues that Gallagher's actions, without more, give rise to an inference that Metro failed in its hiring, training, or supervision of Gallagher because "no police officer who had been properly investigated before hiring and properly trained and supervised after hiring would act in such a fashion." (Docket Entry No. 71 at 4.) That inference is unreasonable on its face and expressly disallowed by the law. *See City of Canton*, 489 U.S. 390-91. Moreover, it elides the distinction between municipal liability for an unconstitutional policy or custom, which is appropriate under the law, and respondeat superior liability for a municipal employee's actions, which is not. *See Thomas*, 398 F.3d at 432-33 (warning that inferring a municipal-wide policy based solely on one instance of potential misconduct would collapse the municipal liability standard into a simple respondeat superior standard). Plaintiff has not adequately pled a claim for relief based on Metro's failure to screen, train, supervise, or discipline Gallagher.

### c) Facially Inadequate Policies

Plaintiff also cites two Metro policies that he alleges directly led to his unconstitutional arrest. First, he contends that Metro's "obstruction of rights" policy is so poorly drafted as to offer no meaningful instruction to police officers. Second, he asserts that Metro's policy encouraging "proactive police action such as serving warrants . . . fostered an atmosphere of officers overreaching in their attempts to perform such acts," and the "atmosphere led to the events of November 16, 2010." (Docket Entry No. 63 at 5.) Metro responds that its "obstruction of rights" policy explicitly requires officers to act in accordance with the law and prohibits them from using abusive language, acting with excessive force, or obstructing people's rights. It argues that such a policy could not plausibly be said to have caused Gallagher to handcuff Plaintiff without probable cause and while using excessive force. (Docket Entry No. 68 at 14.) It

18

further responds that the "proactive police action" policy does bear a close enough causal connection to Plaintiff's injury to be the "moving force" behind the violation for purposes of liability under § 1983. (*Id.* at 15.)

The Court finds that Plaintiff has not stated a plausible claim that his injury "flowed from" Metro's "obstruction of rights" policy. *See Paige v. Coyner*, 614 F.3d 273, 284 (6th Cir. 2010). To satisfy *Monell*'s requirements, a plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993). "There must be a direct causal link between the policy and the alleged constitutional violation such that the County's deliberate conduct can be deemed the 'moving force' behind the violation. *Graham ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004). Here, Plaintiff identifies a policy prohibiting police department employees from "knowingly depriv[ing] any person of any right to which they are entitled by law or the rules and regulations of the Metropolitan Government." (Docket Entry No. 68-1 at 4.)[5] Other sections of the twenty-page General Order on Deportment and Personal Appearance require police employees to be "courteous, civil, and respectful"; to be "familiar with and enforce all laws, ordinances, and statutes" and "prevent their violation"; to "at all times conduct themselves in a manner which does not bring discredit to themselves, the Department, or the City"; and forbids them from

---

[5] The Court considers Metropolitan Nashville Police Department General Order No. 09-03, Docket Entry No. 68-1, to be part of the pleadings. "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) ("[A] defendant may introduce certain pertinent documents if the plaintiff fails to do so. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied.") (internal citations omitted). Additionally, "a court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion." *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (citing *Passa v. City of Columbus*, 123 Fed. Appx. 694, 697 (6th Cir. 2005) ("[I]n order to preserve a party's right to a fair hearing, a court, on a motion to dismiss, must only take judicial notice of facts which are not subject to reasonable dispute.")).

using profanity, intimidation, excessive force, excessive argument, or displaying a lack of self-control. (Docket Entry No. 68-1 at 3-5, 9.) Plaintiff's argument that a comprehensive policy adopted "to ensure the professionalism of the police department" is what caused his injury is implausible, bordering on impossible.

Similarly, a Metro policy that rewarded officers for proactive work such as serving warrants cannot be the cause of Plaintiff's injury, and Plaintiff does not even plead as much. Instead, he alleges that the proactive work policy "fostered an atmosphere of officers overreaching," and the atmosphere, in turn, "led to the events of November 16, 2010." (Docket Entry No. 63 at 5.) This chain of causation is too attenuated, remote, and speculative to affix liability on Metro for a single instance of police misconduct. *See Mann*, 289 F.App'x at 850-51. "[W]here the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Tuttle*, 471 U.S. at 824. Accordingly, Plaintiff fails to plead a valid claim against Metro for a facially unconstitutional policy under § 1983.

Because under no theory can Plaintiff "nudge" his claim of municipal liability for Gallagher's actions "across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, Count II will be dismissed in its entirety.

### III. Count III: Fourth and Fourteenth Violations (Gallagher)

Gallagher asks the Court to dismiss Count III to the extent that it attempts to state a cause of action under the Fourteenth Amendment, and he argues that Count III is duplicative of Count I. (Docket Entry No. 65 at 3.) Plaintiff, agreeing that his claim arises under the Fourth

Amendment, raises no argument to distinguish Count III from Count I, with respect to Gallagher. (Docket Entry No. 69 at 3.) Count III sets forth no claim against Metro.

Because the Court finds that Plaintiff in Count I properly pled a cause of action under § 1983 and the Fourth Amendment with respect to Gallagher, and Count III duplicates the language of Count I, Count III will be dismissed in its entirety.

## IV.    Counts IV-VIII: Negligence, Battery, False Imprisonment, and Outrageous Conduct (Both Defendants) and TGTLA (Metro)

Metro asks the Court to dismiss all claims against it in Counts IV-VIII because a municipality's state-law immunity from suit is not removed by the Tennessee Governmental Tort Liability Act (TGTLA) for injuries arising out of "civil rights." (Docket Entry No. 68 at 18.) Alternatively, Metro argues that it is entitled to discretionary function immunity, and as a further alternative, it argues that the Court should decline to exercise supplemental jurisdiction over the state-law claims. (*Id.*, at 19-21.) Gallagher asks the Court to dismiss Count IV for two reasons of his own: that negligence cannot sustain a suit under § 1983, and alternatively, that Gallagher is immune from suit under the TGTLA because his municipal employer's immunity has been removed. Finally, Gallagher, like Metro, urges the court to decline to exercise supplemental jurisdiction over Count IV. (Docket Entry No. 65 at 10-11.) Gallagher has not requested specific relief from Counts V-VII. With respect to Count VIII, he asks the Court to state expressly that it is directed at Metro and not him. (*Id.*, at 12.)

Plaintiff responds that Metro is not immune from suit under the TGTLA for claims sounding in negligence and the intentional torts of battery, false imprisonment, and outrageous conduct, which are not enumerated in the TGTLA. (Docket Entry No. 71 at 7.) Plaintiff agrees that if Metro is not immune from suit, its simple negligence claim against Gallagher would be

foreclosed, and Plaintiff states that Count VIII is not directed at him. (Docket Entry No. 69 at 5.) Finally, he asks the Court to retain jurisdiction over the state-law claims because they arise from the same case or controversy, and trying the state and federal claims separately would waste judicial resources and cause a hardship for Plaintiff. He argues that the Tennessee legislature's preference for trying TGTLA claims in state courts need not control this Court's decision. (Docket Entry No. 69 at 6.)

The Court finds that Metro is "immune from suit for any injury" resulting from the performance of government duties, Tenn. Code Ann. § 29-20-201, and that its immunity is not removed by the general waiver of immunity for claims of state or municipal employee negligence, *see* Tenn. Code Ann. § 29-20-205. In *Johnson v. City of Memphis*, the Sixth Circuit held that a widow could not add a state-law negligence claim to her § 1983 suit alleging Fourth Amendment violations by police officers because the negligence claim "[arose] out of the same circumstances giving rise to her civil rights claim." 617 F.3d 864, 872 (6th Cir. 2010). Thus, the Court reasoned, the claim was barred by TGTLA's retention of municipal immunity for claims "aris[ing] out of . . . civil rights." *Id.* "This is consistent with the results reached by the majority of district courts addressing this question." *Id. See, e.g., Hale v. Randolph*, 2004 WL 1854179 at 17 (E.D. Tenn. 2004); *Campbell v. Anderson Cnty.*, 695 F.Supp.2d 764, 778 (E.D. Tenn.2010). This case is controlled by the result in *Johnson*. Plaintiff's state-law claims against Metro arise out of the same circumstances giving rise to his § 1983 civil rights claims under the Fourth Amendment. Therefore, they are barred by TGTLA's retention of municipal immunity for injuries arising from civil rights. Accordingly, the Court will dismiss all claims against Metro from Counts IV-VIII.

Because Metro is immune from Plaintiff's negligence claim, Gallagher is not. *See* Tenn. Code Ann. § 29-20-310 ("No claim may be brought against an employee . . . for damages for which the immunity of the governmental entity is removed by this chapter . . . ); *Spears v. Cooper*, 1:07-CV-58, 2009 WL 838179 (E.D. Tenn. Mar. 30, 2009) *rev'd in part sub nom. Spears v. Ruth*, 589 F.3d 249 (6th Cir. 2009); *Stone v. City of Grand Junction, Tenn.*, 765 F. Supp. 2d 1060, 1078-79 (W.D. Tenn. 2011) (where the municipality's immunity from state tort claim is not removed by the TGTLA, police officer is proper party defendant). As discussed *supra*, Metro's immunity is not removed by the TGTLA. Because Count IV asserts a pure negligence claim (and not a § 1983 claim, as Gallagher suggests) against Gallagher, who is not immune under TGTLA, the Court declines to dismiss the claim against him from Count IV. Plaintiff's state-law claims against Gallagher in Counts V, VI, and VII, which he does not challenge, remain undisturbed.[6] Count VIII contains no claims against Gallagher. (Docket Entry No. 69 at 6.)

## V.    Supplemental Jurisdiction

The Court will retain jurisdiction over the state-law claims. While the Tennessee legislature's "unequivocal preference" that TGTLA claims be handled in state courts has been considered an "exceptional circumstance" permitting a federal district court to decline to exercise supplemental jurisdiction, it does not require dismissal of pendant state-law claims. *Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000). Indeed, federal courts have declined to dismiss TGTLA claims "where invoking the exceptional circumstance objection would necessitate duplicative litigation which would be wasteful of judicial and litigant resources."

---

[6] To the extent Counts V, VI, and VII allege claims against Gallagher in his "official capacity," they are dismissed as stating claims against Metro. *See Cox v. State*, 217 Tenn. 644, 648, 399 S.W.2d 776, 778 (Tenn. 1965) (A suit against a state official in his official capacity is a 'suit against the state.').

23

*Birgs*, 686 F.Supp.2d at 778-79 (collecting cases) (internal quotation marks omitted); *see Harris v. McCormack*, 2011 WL 253163, at *4 (M.D. Tenn. 2011) (where declining to exercise supplemental jurisdiction over TGTLA claims may lead to two separate trials, judicial economy, convenience, and fairness counsel against it). In light of the above-cited considerations, the Court finds no "compelling reason" to decline jurisdiction under § 1367(c), and thus will retain jurisdiction over the surviving TGTLA claims.

## **CONCLUSION**

Defendant Metro's motion to dismiss the Second Amended Complaint is GRANTED with respect to all claims against Metro. They are dismissed without prejudice. Metro's motion to strike is DENIED. Metro's motion to dismiss the First Amended Complaint is DENIED AS MOOT.

Defendant Gallagher's motion to dismiss the Second Amended Complaint is GRANTED IN PART and DENIED IN PART. Plaintiff's claims against him, in his personal capacity only, will survive under Counts I, IV, V, VI, and VII. The Court will continue to exercise supplemental jurisdiction over Plaintiff's state-law claims. Gallagher's motion to dismiss the First Amended Complaint is DENIED AS MOOT. Gallagher's motion to stay discovery is DENIED AS MOOT.

The joint motion for relief under Local Rule 83.03 is DENIED.

An appropriate Order shall be entered.

*Kevin H. Sharp*
—————————————————————
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE